UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAWRENCE OLIVERIO, <br><br> Plaintiff, <br><br> v. <br><br> ALLIED STEEL BUILDINGS, INC., <br><br> Defendant. | Civil Action No. 15-cv-13562-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                           **April 6, 2016**

**I.     Introduction**

Plaintiff Lawrence Oliverio ("Oliverio") brings state law claims against defendant Allied Steel Buildings, Inc. ("Allied") in a commercial construction dispute based upon diversity jurisdiction. D. 1. Allied now moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. D. 5. The Court ALLOWS in part and DENIES in part the motion.

**II.    Standard of Review**

On a motion to dismiss under Rule 12(b)(6), the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must distinguish the factual allegations from the conclusory legal allegations. Id. Factual allegations are accepted as true, while conclusory legal allegations are not. Id. Second, the Court must determine whether the factual allegations "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). "Plausible, of

1

course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the Court] 'to draw on' [its] 'judicial experience and common sense.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

## III.  Factual Allegations

The following allegations, taken as true for the purposes of considering the motion to dismiss, are from the complaint. D. 1. Oliverio is a Massachusetts resident. D. 1 ¶ 1. Allied is a corporation with a principal place of business in Florida. Id. ¶ 2.

Around May 2014, Oliverio and his designated agent, Integrated Builders ("Integrated"), a general construction contractor, began negotiating with Allied over the purchase and installation of materials and services necessary for the construction of a steel building. Id. ¶ 4. Allied received detailed drawings, plans and specifications as well as governmental regulations relevant for the project. Id.

Allied told Oliverio and Integrated that it could deliver all the necessary materials for about $45,000 and that its own recommended erector, Louis Holly at FaithLouie Management ("Holly"), could provide all the necessary services for erecting the building. Id. ¶¶ 4, 6. Allied specifically advised that it would match or beat any price quoted by competing building suppliers for the materials and erection of the building. Id. ¶ 5. Allied also specifically advised that the cost of erection would range between $3 and $5 per square foot and that Holly could do it at that price. Id. The sole reason Oliverio decided to go with Allied and forgo competing bids was because of these representations. Id. ¶¶ 6-8.

Oliverio paid Allied for the materials in advance. Id. ¶ 8. He also paid Holly in advance for services and the rental of allegedly necessary heavy equipment. Id. Yet after receiving the payment, Holly purposefully refused and failed to appear on site to perform any service

whatsoever other than to mount a few steel columns and grids incompetently and leave them unsupported sitting on pylons.  Id.  Holly also failed to attend two separately pre-arranged meetings, squandering at least three days of work time.  Id.  And Holly failed to return or arrange for the return of heavy construction equipment, resulting in excess rental fees.  Id. ¶ 9.  Despite Oliverio's repeated attempts to contact Allied to find a way to remediate or mitigate the damages already incurred by Holly's failures, Allied failed to suggest or discuss an alternative source of services because Allied said it could not get anyone else to erect the building.  Id. ¶ 12.

### IV.    Procedural History

Oliverio filed this lawsuit on October 14, 2015.  D. 1.  He asserts fraud (Count I), negligence (Count II), breach of contract (Count III), unfair and deceptive trade practices (Count IV) and unjust enrichment claims (Count V) against Allied.  Id. ¶¶ 15-24.  Allied has now moved to dismiss the complaint.  D. 5.  The Court heard argument on the motion and took it under advisement.  D. 24.

### V.    Discussion

#### A.    Subject Matter Jurisdiction and the Alleged Contract

As an initial matter, Allied argues that Oliverio cannot meet the amount-in-controversy requirement for diversity jurisdiction.  D. 6 at 16.  "A plaintiff's good faith allegation of damages" that meets the required amount in controversy is "usually enough."  CE Design Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014).  Even where the amount is challenged, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."  Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001) (quoting St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)).

Oliverio alleges that he spent at least $7,000 to purchase additional materials and to rent

the additional equipment necessary to complete the building, at least $35,000 to finish the building's construction and $5,000 due to Allied's faulty assembly plans.  D. 1 ¶¶ 4, 6, 11, 13.  He also alleges that he lost a $10,500 advance payment and at least another $35,000 in lost rental income.  Id. ¶¶ 13-24.  These alleged damages total more than $75,000, the amount-in-controversy threshold.  Even Allied acknowledges that these alleged damages total at least $77,000, D. 6 at 16, more than the jurisdictional amount.  Given the allegations regarding the jurisdictional amount, the Court cannot conclude to a legal certainty that Oliverio has failed to allege diversity jurisdiction.  See, e.g., Klauzinski v. Fukuda, No. 14-cv-10467-NMG, 2015 WL 10433613, at *3 (D. Mass. Dec. 2, 2015) (denying motion to dismiss for lack of diversity jurisdiction because the plaintiff listed the type and amount of alleged damages in her complaint, which totaled more than $75,000).  This is especially true where a complaint signed under the pains and penalties of perjury, like Oliverio's verified complaint here, can be treated as an affidavit at this stage.  See JMTR Enterprises, L.L.C. v. Duchin, 42 F. Supp. 2d 87, 94 (D. Mass. 1999) (noting case law where verified complaints were considered to be affidavits in opposition to dispositive motions).

Second, Allied attacks the complaint by arguing that an alleged contract that both parties signed in July 2014 contains key terms and provisions that control this dispute.  D. 6 at 2-4; D. 6-1.  Additionally, Allied points out that the alleged contract contains a forum selection clause that the Court should enforce.  D. 6 at 18-19; D. 6-1 at 4.

"In this Circuit, we treat a motion to dismiss based on a forum selection clause as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." Claudio-De León v. Sistema Universitario Ana G. Méndez, 775 F.3d 41, 46 & n.3 (1st Cir. 2014) (noting that "absent a clear statement from the Supreme Court to the contrary, the use of Rule

12(b)(6) to evaluate forum selection clauses is still permissible in this Circuit") (citation and internal quotation marks omitted). "[T]hat a motion to dismiss on the basis of a forum selection clause is treated as a 12(b)(6) motion has certain consequences for the materials that a district court may appropriately consider when ruling on such a motion." Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009). "Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." Id. (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)) (internal quotation marks omitted). "When, however, 'a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), the document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'" BBJ, Inc. v. MillerCoors, LLC, No. 12-cv-11305-IT, 2015 WL 4465410, at *5 (D. Mass. July 21, 2015) (quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998)).

In opposing Allied's motion, Oliverio maintains that the purported contract is not authentic, valid or accurate and that he never bargained for or agreed to its terms. D. 16 at 4-8. He also insists that his claims are not based on the terms in the purported contract, but on a separate agreement with Allied with different terms. D. 16 at 4-5. Oliverio maintains that in July 2014, he merely agreed to pay $3,500 for a copy of preliminary plans. D. 16 at 5. At oral argument, Oliverio contended that although he saw the first page of the purported July 2014 contract, Allied never provided him the other pages of the alleged contract, which contained the forum selection clause.

Here, Allied relies upon several documents that Oliverio contests and that were not attached to or expressly incorporated into Oliverio's complaint. The parties' arguments also suggest that several factual disputes exist, particularly whether any agreement made in July 2014 or any other time included the forum selection clause as a material term. For now, because the Court relies upon the allegations in the complaint, presumed to be true, and draws all reasonable inferences in Oliverio's favor, the Court denies the motion on this basis without prejudice. See BBJ, 2015 WL 4465410, at *5-6 (denying motion because the moving parties failed to rely on unchallenged authentic documents attached or expressly linked to the complaint and failed to establish that the plaintiffs "had knowledge of and assented to" the forum selection clause, which allegedly had been incorporated by reference as terms and conditions).

### B.     Fraud (Count I)

"Under Massachusetts law, fraud requires that the defendant made a knowingly false statement concerning a material matter that was intended to, and did in fact, induce the plaintiff's reliance and, through that reliance, created an injury." Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 357 (1st Cir. 2013). Fed. R. Civ. P. 9(b) requires that a plaintiff plead fraud with particularity. A plaintiff must specify "the false statements and by whom they were made" and identify "the basis for inferring scienter." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009).

Here, Oliverio alleges that Allied told him that Allied and Holly could provide him the necessary materials and services respectively to construct his proposed building. D. 1 ¶ 4. Allied also allegedly told him that it would match or beat any competing quote for both the materials and services. Id. ¶ 5. Additionally, Allied purportedly represented that erecting the roughly 2,400 square foot building would cost between three and five dollars per square foot,

which Holly could competently do.  Id.  Oliverio chose Allied because Allied had made these representations.  Id. ¶¶ 6, 8.  As a result, he suffered damages.  Id. ¶ 16.

Oliverio has sufficiently alleged misleading statements that induced his reliance. Nevertheless, his fraud claim fails because he does not sufficiently plead that Allied made the false statements knowingly.  Oliverio only alleges that Allied's "aforesaid conduct constitutes . . . fraud," D. 1 ¶ 16, and he contends that scienter is already established because that element is "inherent" to the claim.  D. 16 at 1.  However, a complaint's "general averment of the defendant's 'knowledge' of material falsity" is inadequate unless the complaint also sets forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading."  Cardinale, 567 F.3d at 13 (internal quotation and citation omitted).  Here, at base, Oliverio's only argument is that Allied's representations turned out to be false.  But if Allied's scienter could "be inferred from [its] subsequent breach," every breach of contract claim "would collapse . . . into a claim for fraud."  Jennings v. Nathanson, 404 F. Supp. 2d 380, 399 (D. Mass. 2005).  Without specific facts under Fed. R. Civ. P. 9(b) from which the Court can reasonably infer that Allied knew its representations were false at the time it made them, Count I is dismissed.

    C.    **Negligent Representation (Count II)**

To assert a claim for negligent misrepresentation under Massachusetts law, a plaintiff must allege that the defendant "(1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information."  Braunstein v. McCabe, 571 F.3d 108, 126 (1st Cir. 2009) (quoting Gossels v.

Fleet Nat'l Bank, 453 Mass. 366, 372 (2009)).  Unlike a claim for fraud, negligent misrepresentation "does not require a showing that the defendant even knew that the statements made were false or that the defendant actually intended to deceive the plaintiff."  Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 60 n.25 (2004) (quoting Kitner v. CTW Transp., Inc., 53 Mass. App. Ct. 741, 749 (2002)) (internal quotation mark omitted).

Allied argues that Count II should be dismissed because economic losses are unrecoverable in tort actions in the absence of personal injury or property damage.  D. 6 at 12.  Massachusetts courts, however, have stated that such losses may be recovered "as a result of an actionable misrepresentation."  Passatempo v. McMenimen, 461 Mass. 279, 302 (2012) (quotation mark and citation omitted); Nota Const. Corp. v. Keyes Associates, Inc., 45 Mass. App. Ct. 15, 20 & n.1 (1998) (noting that "[a]n exception to the [economic loss] doctrine permits recovery for economic losses resulting from negligent misrepresentation").  Because Oliverio has pled sufficient allegations regarding the alleged negligent misrepresentations, Count II survives.[1]

### D. Breach of Contract (Count III)

To state a claim for breach of contract under Massachusetts law, the plaintiff must allege "that a valid, binding contract existed, the defendant breached the terms of the contract, and the plaintiff sustained damages as a result of the breach."  Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 232 (1st Cir. 2013) (internal quotation and citation omitted).

Here, Oliverio alleges that it negotiated with Allied for "the purchase and installation of materials and services necessary for construction of a competent steel building."  D. 1 ¶ 4.  Allied promised Oliverio that Allied and Holly could "deliver all necessary materials" and

---

[1] Oliverio labeled Count II as a negligence claim but clarified in his opposition that the claim is for negligent representation.  D. 1 at 6; D. 16 at 15.  Accordingly, the Court construes Count II as the latter.

"provide all necessary services" for his proposed building. Id. Allied also promised that its quote would match or beat any price for both materials and services. Id. ¶ 5. Allied stated that Holly was Allied's "own erector," knew Allied's products and services well and was capable of erecting the building in a competent and timely manner. Id. ¶ 7. In turn, Holly told Oliverio that Allied was the best choice among the competing suppliers. Id. Oliverio ultimately accepted Allied's bid and paid for both the materials, plans and services. Id. ¶¶ 8, 11. Ultimately, Allied failed to deliver as promised and, as a result, Oliverio suffered harm. Based on these allegations, the Court concludes that Oliverio has adequately pled a breach of contract claim.

Allied argues that any part of the claim based on Holly's failure to erect the building should be dismissed because Oliverio's allegations that Holly was Allied's agent are conclusory. D. 6 at 13. At this stage, however, Oliverio has met his burden because all reasonable inferences must be drawn in his favor. Cardigan Mountain Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 87 (1st Cir. 2015). Oliverio has sufficiently alleged that he contracted with Allied for both materials and services and that on the latter, Allied offered a competitive quote and directed him to deal with Holly. D. 1 ¶¶ 4-6. Holly's failure to complete the building thus remains relevant because the parties' contract allegedly included Holly's services as well. Moreover, Allied's description of Holly as "its own erector" and its decision to refer Oliverio to Holly could have reasonably led Oliverio to believe that Holly was Allied's agent and subject to its control. Id. ¶ 7.

### E. Mass. Gen. L. c. 93A (Count IV)

Chapter 93A proscribes "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. c. 93A, § 2. Allied argues that the Chapter 93A claim should be

dismissed because it appears to be derivative of Oliverio's fraud, negligent misrepresentation and breach of contract claims, which it has urged this Court to dismiss. D. 6 at 14.

The claim is derivative, but it survives the motion to dismiss. Under Massachusetts law, a negligent misrepresentation "may be so extreme or egregious as to constitute a violation" of Chapter 93A. Samia Companies LLC v. MRI Software LLC, 898 F. Supp. 2d 326, 345 (D. Mass. 2012) (internal quotation mark and citation omitted). "Because [Oliverio's] claim for negligent misrepresentation remains viable and has yet to be fully developed, it would be inappropriate to dismiss the Chapter 93A claim at this juncture." Id. Similarly, although a breach of contract alone is not an unfair trade practice under Chapter 93A, "[f]urther factual development is appropriate before the [C]ourt determines whether [Allied's] conduct in failing to fulfill its contractual obligations rises to the level" of a Chapter 93 violation. Id.

### F.     Unjust Enrichment (Count V)

"To succeed with an unjust enrichment claim under Massachusetts law, a plaintiff must show that the defendant received, was aware of, and accepted or retained a benefit conferred by the plaintiff 'under circumstances which make such acceptance or retention inequitable.'" Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012) (quoting Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d 282, 294 (D. Mass. 2009)). Allied argues that this claim should be dismissed because Oliverio has an adequate remedy at law. D. 6 at 15.

Although Allied is correct that "damages for breach of contract and unjust enrichment are mutually exclusive," it is "accepted practice to pursue both theories at the pleading stage." Lass, 695 F.3d at 140; see, e.g., Szulik v. State St. Bank & Tr. Co., 935 F. Supp. 2d 240, 274 (D. Mass. 2013) (stating that "[a]lthough the existence of a contractual relationship may ultimately bar the unjust enrichment claim, it does not warrant . . . dismissal" on a motion to dismiss); Fed. R. Civ.

P. 8(d)(3) (stating that "[a] party may state as many separate claims or defenses as it has, regardless of consistency").  For now, Count V survives.

## VI.   Conclusion

For these reasons, Allied's motion to dismiss, D. 5, is ALLOWED in part and DENIED in part.  Count I is dismissed while Counts II – V remain.

**So Ordered.**

                                                                /s/ Denise J. Casper
                                                                United States District Judge